IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WAUSAU UNDERWRITERS INSURANCE COMPANY, a Wisconsin stock insurance company, as subrogee of Choice Hotels International, Inc., )<br><br>Plaintiff, )<br><br>vs. )<br><br>MT. VERNON FIRE INS. CO., a Pennsylvania stock insurance company, and FIREMAN'S FUND INS. CO. OF OHIO, an Ohio stock insurance company, )<br><br>Garnishee defendants. ) | No. 06 C 250 |

## MEMORANDUM OPINION AND ORDER

Wausau Underwriters Insurance Company ("Wausau"), as subrogee of Choice Hotels International, Inc. ("Choice"), brings this action against garnishee defendants Mt. Vernon Fire Insurance Company ("Mt. Vernon") and Fireman's Fund Insurance Company of Ohio ("Fireman"), insurers of CPPY, Inc. ("CPPY"), for reimbursement of attorney's fees Wausau paid to defend Choice against a wrongful death claim that arose from an accident in a hotel that CPPY owned and operated under a franchise agreement with Choice. All parties have moved for summary judgment. For the following reasons, we grant Wausau's and Mt. Vernon's motions for summary judgment and deny Fireman's motion.

### BACKGROUND

Choice is a large hotel conglomerate that owns a number of hotel chains, including Sleep, Comfort, and Quality Inns. On May 8, 1998, CPPY entered into a franchise agreement with Choice, whereby Choice granted CPPY a non-exclusive license to use the Choice name

in the operation of its hotel. Included in the franchise agreement was an indemnification provision which required CPPY to

> defend, indemnify and hold harmless [Choice], [its] affiliates and subsidiaries . . . from any claim, loss, cost, damage, expense and liability (a "Claim"), including reasonable attorneys' fees (whether or not a lawsuit has been filed) and any court costs, by reason of damage or loss, including personal injury, of any nature, from or connected with the Hotel construction or operation, or any facilities that are managed by others in the Hotel, or out of, or as a result of [CPPY's] (or [its] agent's or employee's) error, omission, act or failure, even where negligence of an Indemnified Party is alleged, except to the extent that the loss, costs, damage, expense or liability is proximately caused by the negligence of an Indemnified Party.
> 
> * * * *
> 
> [CPPY] must reimburse [Choice] for all amounts [Choice] reasonably spend[s], including attorneys' fees and court costs, to protect the Indemnified Parties from or to remedy, [CPPY's] defaults under this Agreement or claims arising out of [CPPY's] operation of the Hotel.

The contract also required CPPY to obtain and maintain a number of insurance policies, including a comprehensive general liability property with a limit of not less than $5,000,000. CPPY obtained a primary policy from Mt. Vernon with $1,000,000 in coverage and an excess policy with Fireman with $5,000,000 in coverage. The Mt. Vernon policy stated:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
> 
> * * * *
> 
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

The Mt. Vernon policy contained an exclusion which read:

> This insurance does not apply to:
> 
> * * * *
> 
> b. Contractual Liability
> "Bodily Injury" or "property damage" for which the insured is obligated to pay

damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

\* \* \* \*

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

> (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and
> (b) Such attorneys fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

The policy defined an "insured contract" as including "Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad." In addition, the policy stated in the supplementary payment provision that if Mt. Vernon defends the insured against a suit and an indemnitee of the insured is also named as a defendant in the suit, Mt. Vernon will defend that indemnitee if a number of conditions are met, including:

> (a) The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract"'
> (b) This insurance applies to such liability assumed by the insured;
> (c) The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";
> (d) The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;
> (e) The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee;

If Mt. Vernon agrees to defend the indemnitee, the attorneys' fees incurred in that defense will be paid as supplementary payments and thus will not be factored into the policy

payment limits.

The Fireman policy stated:

> This coverage only applies to injury or damage covered by the Primary Insurance. The definitions, terms, conditions, limitations and exclusions of the Primary Policies, in effect at the inception date of this policy, apply to this coverage unless they are inconsistent with provisions of this policy or relate to premium, subrogation, other insurance, an obligation to investigate or defend, the amount or limits of insurance, payment of expenses, cancellation or any renewal agreement.
>
> Subject to the other provisions of this policy, [Fireman] will pay on behalf of the Insured those sums in excess of Primary Insurance that the Insured becomes legally obligated to pay as damages.

The Fireman policy also included a contractual liability exclusion which stated that that policy did not apply

> to any liability for injury sustained by any officer or other employee of the Insured, if such liability is assumed by the Insured under a contract or agreement made with a labor union for the benefit of such officer or other employee.

On May 24, 2002, a young boy drowned in the pool at CPPY's hotel, and on June 26, 2002, a wrongful death suit was brought against CPPY and Choice. Choice filed cross-claims against CPPY for contribution, breach of contract and indemnification. Choice and Wausau sent CPPY and its counsel letters requesting defense and indemnification. Mt. Vernon replied, stating that Choice was not eligible for either because it was not an additional insured under the policy and liability of CPPY arose through a contract, which fell under the policy's contractual liability exclusion. Choice maintained that it was an additional insured, noting that it was so listed in the certificate of insurance. Choice further maintained that liability arose from an insured contract, which was an exception to the contractual liability exclusion. It also sought a defense under Mt. Vernon's supplemental payments provision. Without

admitting that Choice was covered under the policy as possessing an insured contract with CPPY, Mt. Vernon offered to defend Choice under the supplemental payments provision. Choice did not agree to this offer, however, as it would have had to drop its cross-claims against CPPY in order to qualify under the supplemental payment provision conditions.

Wausau defended Choice in the wrongful death suit. The parties to the suit settled for $3,500,000, with Mt. Vernon paying its liability limit of $1,000,000 (along with paying for the defense of CPPY) and the other $1,500,000 being paid out of the excess policy with Fireman. Wausau incurred approximately $106,000 in attorneys' fees defending Choice.

Wausau then brought this action against CPPY, Mt. Vernon and Fireman for reimbursement of the attorneys' fees. CPPY was voluntarily dismissed from the case pursuant to a stipulation and order entered into by the parties on June 6, 2006 (dkt. #17). In the stipulation, the parties agreed to dismiss CPPY from the case and to permit Wausau to proceed against Mt. Vernon and Fireman as if a judgment of indemnification had been entered against CPPY. Wausau, Mt. Vernon and Fireman have filed motions for summary judgment, upon which we now rule.

## ANALYSIS

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Wausau is a Wisconsin-based company, Mt. Vernon is located in Pennsylvania, and CPPY and Fireman are Ohio businesses. Mt. Vernon and Fireman further consent to personal jurisdiction of this court as garnishee defendants.

Wausau claims that by the terms of the franchise agreement and CPPY's insurance contract with Mt. Vernon, Mt. Vernon had a duty to defend Choice in the wrongful death suit. Wausau argues that Mt. Vernon would be liable for the attorneys' fees that Wausau paid,

except that Mt. Vernon has exhausted its liability payment limit. Wausau contends that because Fireman is the excess insurance provider and has not exceeded its liability cap in this matter, Fireman is liable to Wausau for the $106,000. Mt. Vernon contends that it did not owe Wausau a defense, but, regardless, it is not liable to Wausau because its obligations terminated when it paid its liability limit in the settlement. Fireman argues that Mt. Vernon is liable to Wausau for the attorneys' fees because it did owe Choice a defense, and its failure to provide that defense at that time means that it remains liable for the cost of the defense it should have otherwise provided and paid for.

Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). We draw all inferences and view all admissible evidence in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The parties disagree as to which law governs these proceedings. In their stipulation, the parties agreed that under Illinois law Wausau could not proceed directly against Mt. Vernon or Fireman because it was not an additional insured. On this motion, Mt. Vernon asserts that Ohio law governs the interpretation of this insurance contract. We find that the question of which law applies is moot, however, because Ohio and Illinois both agree that insurance contract interpretation is a question of law appropriate for disposal on summary judgment. Leber v. Smith, 639 N.E.2d 1159, 1163 (Ohio 1994); McDonald's Corp. v. Am. Motorists Ins. Co., 321 Ill. App. 3d 972, 979 (Ill. App. Ct. 2001). Both states further agree that insurance policies are to be construed to give their words plain and ordinary meanings, and that any ambiguity is to be resolved in favor of coverage. Cincinnati Ins. Co. v. Schwerha, 2006 Ohio 3521, P10 (Ohio Ct. App. 2006); Millers Mut. Ins. Ass'n v. Graham Oil Co., 282 Ill. App. 3d

129, 134 (Ill. App. Ct. 1996).

We turn first to whether Mt. Vernon did in fact owe Choice a defense. Wausau argues that Mt. Vernon had a duty to defend Choice, and, for support, cites case law that discusses an insurer's duty to defend an insured. But Wausau has conceded that Choice was not an insured under Mt. Vernon's policy *(see* Stipulation and Order, dkt. #17, June 7, 2006). Wausau appears to conflate CPPY's duty to indemnify and defend Choice with Mt. Vernon's obligations under the insurance contract.

It is clear from the indemnification provision of the Choice/CPPY franchise agreement that CPPY was responsible for defending Choice in the wrongful death suit. We also find that the franchise agreement, which granted a non-exclusive license to CPPY, constitutes a license agreement, qualifying it as an "insured contract" under the Mt. Vernon policy definition. Manpower Inc. v. Mason, 405 F. Supp. 2d 959, 970 (E.D. Wis. 2005)(citing Gladys Glickman, *Franchising* §2.03[2] (1999)("Franchise agreements are licenses 'coupled with restrictions designed to enforce either uniformity of operation or a minimum standard of service.'"). Thus, according to the exception to the contractual liability exclusion in the policy, Mt. Vernon was responsible for Choice's damages assumed by CPPY, including "reasonable attorney fees and necessary litigation expenses," which would be calculated as damages and included in the cap. Wausau mistakenly conflates this provision as requiring Mt. Vernon to provide an actual defense to Choice, which it does not. It merely requires Mt. Vernon to pay for that defense, of which CPPY assumed liability, as part of CPPY's damages. Under the insurance agreement, the only defense that Mt. Vernon was required to provide was to CPPY. Any defense to a non-insured party, here Choice, would be governed by the Supplementary Payments provision, which offers a defense to an indemnitee of the insured, provided that

certain criteria are met. Contrary to Wausau's arguments, Mt. Vernon's offering of a defense under that policy is not the same as conceding that it owed Choice such a defense. The supplemental payments provision provided for an optional defense to an indemnitee, and since Choice declined that option (because it did not want to give up its cross-claims against CPPY), Mt. Vernon was not required to provide Choice with a defense.

However, whether or not Mt. Vernon owed Choice a physical defense is essentially irrelevant to both Wausau and Mt. Vernon's arguments because, as noted above, Mt. Vernon was required to pay those damages which CPPY assumed as part of its indemnification agreement with Choice. This would make Mt. Vernon liable for the cost of Choice's defense, as CPPY assumed that cost. Such costs would have been assumed by Mt. Vernon as damages, and thus would have been subject to the liability limit. Mt. Vernon has exhausted its limit by paying the full policy amount of $1,000,000. Fireman, as the excess policy provider, is responsible for any additional liability, up to $5,000,000, and to date has not exhausted its policy, paying out only $1,500,000. Thus Fireman is obligated to pay any damages in excess of those paid by Mt. Vernon, including Choice's attorneys' fees, unless the Fireman policy explicitly excludes the type of contractual liability assumed by CPPY.

It is clear that the Fireman policy does not exclude the type of liability assumed by CPPY. The contractual liability provision in the Fireman policy excludes coverage only for contracts made with a labor union for the benefit of an officer or fellow employee. That exclusion does not apply to the contract here. Thus, as CPPY's excess insurance provider, Fireman is liable for the damages of Choice, assumed by CPPY, above Mt. Vernon's policy limit. Fireman must therefore reimburse Wausau for the $106,000 in attorneys' fees it accrued in defending Choice. *See* National Union Fire Ins. of Pittsburgh v. Liberty Mutual Ins. Co., No.

86-2000, 1992 U.S. Dist. LEXIS 1048 (E.D. La., Jan. 27, 1992).

## CONCLUSION

For the foregoing reasons, we grant Wausau's and Mt. Vernon's motions for summary judgment, and deny Fireman's motion.

                                                        _____
                                                          JAMES B. MORAN
                                                  Senior Judge, U. S. District Court

_June 21_, 2007.